UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEGGETT & PLATT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 21 C 4854 |
| | ) | |
| UNITED STEELWORKERS LOCAL 9777-51, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court are the parties' Cross-Motions for Summary Judgment. For the reasons set forth below, Plaintiff Leggett & Platt, Inc.'s ("Leggett") Motion for Summary Judgment is denied, and Defendant United Steelworkers Local 9777-51 Union's ("Union") Motion for Summary Judgment is granted.

## BACKGROUND

This case involves a question of whether an arbitrator exceeded her authority under the parties' collective bargaining agreement (the "CBA") when she found Leggett breached the CBA by discharging an employee without just cause. The following facts are from the record and are undisputed unless otherwise noted.

**The Underlying Incident and Discharge**

The employee in question, Charles Arnold, is a member of the Union and worked at Leggett's plant in Aurora, Illinois. Arnold suffered a workplace accident in August 2020.[1] Arnold did not seek medical treatment immediately after the accident. On August 8, 2020, Arnold underwent a drug screen at the request of Leggett's Human Resources and Safety Manager, Kim Myers ("HR Manager Myers"). Arnold did not object to the drug screen, which came back positive for marijuana metabolites. Specifically, the test revealed a marijuana metabolite level of 1463 ng/mL. The order form for the drug test stated the reason for the test was random, rather than post-accident or reasonable suspicion. After receiving Arnold's positive test results, HR Manager Myers spoke to Arnold, who admitted he often uses marijuana recreationally and stated he does not possess a marijuana prescription. Arnold also stated that he does not smoke marijuana at work. HR Manager Myers discharged Arnold for violating Leggett's Substance Abuse Policy (failing a "post-accident drug test").

**Relevant Company Policy Provisions**

Leggett's Substance Abuse Policy prohibits the presence of drugs or alcohol "above the acceptable levels while on the job, on Company property, or in Company vehicles," and provides that "[a]ll employees involved in a workplace accident, injury

---

[1] The parties appear to dispute whether the accident took place on August 7 or August 8. The Arbitrator found that the accident was on August 7. This makes sense because the drug test was conducted on August 8, and it is undisputed the drug test was not conducted on the same date as the accident. For purposes of these cross-motions for summary judgment, however, the exact date of the accident is not a material fact and has no bearing on the Court's analysis.

or illness requiring outside medical treatment, or resulting in property damage, will be required to [*sic*] a drug/alcohol screen." The policy further states Leggett reserves the right to request drug testing if there is reasonable suspicion of drug or alcohol use at work.

Leggett limits the level of marijuana an employee may have in his or her system while in the workplace to 15 ng/mL, although there does not appear to be any policy which specifically states this. There is also no policy that *explicitly* prohibits off-duty marijuana use.

Leggett's Code of Conduct for employees lists the following as an example of the type of misconduct that will normally result in immediate discharge for the first offense: "Marijuana use, possession and/or impairment . . . are prohibited while on the job, on Company property, or while otherwise engaged in Company business . . . . Such use, possession and/or impairment is a violation of Company policy that may result in termination."

### The CBA's Grievance Procedures

The CBA sets forth a grievance and arbitration procedure that Union members subject to discharge may utilize. After his discharge, Arnold brought a grievance challenging Leggett's decision to discharge his employment. Arnold's Union representative filled out a Grievance Report, stating "[t]he union believes that the

3

discharge of Charles was unfair and unjust." The Union specifically stated Leggett violated Article V[2] of the CBA, which states:

> It is understood that the Employer reserves the right to discharge any employee for **just cause**, which action shall be subject to the grievance procedure if the grievance is presented within six (6) working days after the effective date of such discharge.

Dkt. # 14-5, at 8 (emphasis added).[3]

Because the grievance involved a discharge, it proceeded directly to Step 3 of the CBA's grievance procedures, which authorizes the parties to proceed to arbitration. After an arbitrator is selected,

> The parties shall then advise the arbitrator of his selection and, if possible, define for him by agreement the issue to be arbitrated. **If no agreement on the issue can be reached, the written grievance record shall be submitted to the arbitrator in lieu of the defined issue.**

Dkt. # 14-5, at 15 (emphasis added). The CBA further provides that the "arbitrator's award may only interpret and apply to this Agreement and he shall have no jurisdiction to add to or subtract from this Agreement or decide matters not covered by the Agreement." *Id.*

---

[2] The grievance report specifically states, "Agreement Violation: Article V and any other that may apply."

[3] The CBA does not indicate what constitutes "just cause" or what offenses would qualify as "just cause" for termination, although the Employee Code of Conduct does give "examples of the types of misconduct that will normally result in immediate discharge for the first offense (no matter when discovered)." Dkt. # 14-3, at 16.

4

**The Arbitrator's Decision**

The arbitration took place on April 29, 2021, with Sharon Gallagher serving as arbitrator. The parties were unable to agree on the issue to be arbitrated. Leggett suggested, "Was the discharge of Charles Arnold lawful under Illinois law?". The Union proposed, "Did the Company have just cause to discharge Charles Arnold?". The Arbitrator found the Union's issue more appropriately stated the dispute and what should be decided. This was because the grievance form alleged an "unjust" discharge and cited Article V of the CBA as violated. [4] The Arbitrator went on to explain that the CBA mentions just cause for discharge not once, but twice, making it clear that the parties intended just cause to be the standard used in discharge cases at Leggett.

At the arbitration, the Union raised—for the first time—an argument that Leggett had no right to drug test Arnold. Leggett objected to this argument, but the Arbitrator found that because Leggett withheld the drug tests results until February 2021, Leggett unfairly denied the Union the information it needed to assess the case fairly and present their testing argument earlier. Therefore, the Arbitrator concluded the Union's argument "right to test" argument was properly before her.

---

[4] The Arbitrator pointed out that because there was no reference to Illinois law in the CBA and she had no jurisdiction to decide matters not covered by the CBA, for Leggett to "argue Illinois law should somehow override the clear and unambiguous requirement that discharges be only for just cause is unsupported by the express terms of this contract as well as by general principles of labor relations." Dkt. # 14-9. The Arbitrator did state, however, that because the issue was a major Leggett argument, she would fully address it in her decision. *Id.*

After a lengthy discussion of the issues, the relevant policies, the evidence, and the parties' positions, the Arbitrator concluded:

> In all of the circumstances here, the Company had no right to test Arnold under its rules and policies as written. But even if they had the right to do so, their Substance Abuse Policy and Rules did not allow them to discipline Arnold by having metabolites – the waste products of recreational marijuana usage – in his system. Nor did the law of the State of Illinois allow the Company to discharge Arnold for off-premises, off-duty, off-call use of a legal substance where there was no evidence of use, impairment or possession and no suspicion thereof in the workplace. Because Arnold did not violate any Company rule or policy as written, the Company will be ordered to return him to work with benefits and it will be ordered to expunge his record of any and all references to his discharge . . . .

Dkt. # 14-9, at 28–29. The Arbitrator sustained the grievance, concluding Leggett "did not have just cause to discharge Charles Arnold." *Id.* at 29.

## **LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (cleaned up). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Citizens for*

*Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The nonmovant "must go beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict in [their] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). And "[c]onclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (cleaned up).

"The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: we construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012).

## DISCUSSION

In its Motion for Summary Judgment, Leggett argues the Court should vacate the arbitration award for two reasons: first, the Arbitrator exceeded her authority under the CBA when she adjudicated the no-right-to-test theory, which Arnold never grieved. This is because the CBA expressly limits arbitration to only the issues grieved. Second, the arbitration award is contrary to public policy because Illinois law allows employers

7

to establish zero tolerance workplaces and test employees for drugs after a workplace accident. The Union, on the other hand, contends the award should be enforced because the Arbitrator provided three alternative bases for her decision and the CBA obligated her to define the issues based on the grievance record in the case.

"Judicial review of arbitration awards is extremely limited." *Johnson Controls, Inc., Sys. & Servs. Div. v. United Ass'n of Journeymen*, 39 F.3d 821, 824 (7th Cir. 1994) (collecting cases). The Supreme Court has held that, "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' . . . the award is legitimate." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). In other words, the question presented to "a federal court asked to set aside an award . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1194–95 (7th Cir. 1987).

Judicial deference to arbitration, however, is not unlimited. *U.S. Soccer Fed'n, Inc. v. U.S. Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 831–32 (7th Cir. 2016). "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *Enter. Wheel & Car Corp.*, 363 U.S. at 597. Thus, an arbitration award may be set aside where the arbitrator has exceeded his authority under a controlling collective bargaining

agreement. *See, e.g.*, *Carey v. Westinghouse Elec. Corp.*, 375 US 261, 272 (1964); *Advance Cast Stone Co. v. Bridge, Structural and Reinforcing Iron Workers, Local Union No. 1*, 376 F.3d 734, 743 (7th Cir. 2004); *see also* 9 U.S.C. § 10(a)(4). Nor may a court enforce an arbitration award that is contrary to public policy. *W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 461 U.S. 757, 766 (1983).

## I. The Arbitrator Did Not Exceed Her Authority Under the CBA

With the above standards in mind, the Court first addresses Leggett's argument that the Arbitrator exceeded her authority under the CBA. Leggett argues the Arbitrator exceeded her authority when she adjudicated the "no-right-to-test" theory, which it says Arnold never specifically grieved—the issue was first raised at the arbitration. True, the Arbitrator found that Leggett had no right to test Arnold, but immediately followed this up by stating, "But even if they had the right to do so, their Substance Abuse Policy and Rules did not allow them to discipline Arnold by having metabolites – the waste products of recreational marijuana usage – in his system." Dkt. # 14-9, at 28. The Arbitrator concluded, "Arnold did not violate any [Leggett] rule or policy *as written*." *Id.* at 29 (emphasis added). As a result, Leggett did not have just cause to discharge Arnold.

Simply put, the reason for Arnold's discharge was his violation of the company's substance abuse policy, and the Arbitrator found that Arnold did not violate that policy. Whether or not Leggett had the right to drug test Arnold does not change that fact. The

Arbitrator was empowered to review the propriety of Arnold's discharge under a "just cause" standard, as the written grievance report claimed Arnold's termination was "unjust" and cited Article V of the CBA. The Arbitrator's decision "thus drew its essence from the CBA: It was tethered to the language of the agreement, it set forth an arguable construction of the agreement, and it applied that interpretation to the facts that the parties submitted." *Clear Channel Outdoor, Inc. v. Int'l Unions of Painters & Allied Trades, Loc. 770*, 558 F.3d 670, 676 (7th Cir. 2009); *see also Monee Nursery & Landscaping Co. v. Int'l Union of Operating Eng'rs, Local 150*, 348 F.3d 671, 675 (7th Cir. 2003) (a decision draws its essence from the collective bargaining agreement when it has a plausible foundation in the terms of the agreement). The Arbitrator therefore did not exceed her authority.

## II. The Award Was Not Contrary to Public Policy

Leggett next argues the arbitration award is contrary to public policy because Illinois law allows employers to establish zero tolerance workplaces and test employees for drugs after a workplace accident. Assuming without concluding this is an accurate statement of Illinois law, the award in this case was not contrary to public policy. The standard for vacating an arbitration award on public policy grounds is high: Leggett must demonstrate that the award is contrary to "well defined and dominant" public policy, which must be "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber*, 461 U.S. 757, 766 (1983) (cleaned up).

In this case, the award in no way prohibits Leggett or other employers from establishing zero tolerance and drug testing policies; the award merely confirms that Arnold did not violate an *existing* company policy as written. "The question is whether the decision to reinstate [Arnold] . . . actually violated public policy." *Wyman-Gordon Co. v. United Steelworkers of Am., AFL-CIO*, 613 F. Supp. 626, 632 (N.D. Ill. 1985); *see also E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62–63 (2000) ("And, of course, the question to be answered is not whether Smith's drug use itself violates public policy, but whether the agreement to reinstate him does so."). The Arbitrator's award does not violate public policy.

## CONCLUSION

For the reasons stated above, the Court denies Leggett's Motion for Summary Judgment [12] and grants the Union's Cross-Motion for Summary Judgment [15]. Judgment is entered in favor of the Union. Civil case terminated. It is so ordered.

Dated: April 12, 2022

_____
Charles P. Kocoras
United States District Judge